# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

N.U., a minor, by and through her father )
and next best friend, HERIBERTO UNZUETA, )
and her mother and next best friend, )
ELBA UNZUETA, )　　　　　　**CIVIL ACTION**
　　　　　　　　　　　　　　　　　)
　　　　　　**Plaintiffs,** )　　　　　　**No. 15-4885-KHV**
　　　　　　　　　　　　　　　　　)
**v.** )
　　　　　　　　　　　　　　　　　)
**WAL-MART STORES, INC., et al.,** )
　　　　　　　　　　　　　　　　　)
　　　　　　**Defendants.** )
_____)

## MEMORANDUM AND ORDER

N.U., a minor, by and through her parents, Heriberto Unzueta and Elba Unzueta, brings suit against Wal-Mart Stores, Inc. and Consumer Testing Laboratories, Inc. to recover damages for personal injuries which she sustained when a dress that she wore caught fire.[1] This matter is before the Court on Defendant Wal-Mart Stores, Inc.'s Motion For Summary Judgment And Memorandum In Support ("Motion For Summary Judgment") (Doc. #115) filed February 8, 2017, Defendant Wal-Mart Stores, Inc.'s Motion To Strike Plaintiffs' Response To Defendant's Statement Of Uncontroverted Facts And Plaintiffs' Statement Of Additional Uncontroverted Facts ("Motion To Strike") (Doc. #125) filed March 15, 2017 and Defendant Wal-Mart Stores, Inc.'s Motion For Oral Argument On Wal-Mart Stores, Inc.'s Motion For Summary Judgment And Suggestions In Support Thereof (Doc. #139) filed April 18, 2017. For reasons stated below, the Court overrules all three motions.

---

[1] On March 23, 2017, the Court approved a settlement between plaintiffs and Consumer Testing Laboratories, Inc. See Memorandum And Order (Doc. #127). Plaintiffs thereafter dismissed those claims. Stipulation For Dismissal With Prejudice (Doc. #129) filed March 24, 2017.

# I. Motion To Strike

Defendant asks the Court to strike plaintiffs' response to its statement of uncontroverted facts and plaintiffs' statement of additional uncontroverted facts. Defendant asserts that plaintiffs have failed to (1) refer with particularity to portions of the record on which they rely to dispute defendant's statement of material facts as required by Rule 56(c)(1), Fed. R. Civ. P.,[2] and D. Kan. Rule 56.1(b)(1);[3] (2) set forth additional facts in a concise manner with specific references to record support as required by D. Kan. Rule 56.1(b)(2);[4] (3) comply with the 30-page limitation set forth in

---

[2]     Pursuant to Rule 56(c)(1), Fed. R. Civ. P, for purposes of summary judgment, a party who asserts that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

[3]     District of Kansas Rule 56.1(b)(1) states as follows:

> A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

D. Kan. Rule 56.1(b)(1).

[4]     District of Kansas Rule 56.1(b)(2) states as follows:

> If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required

(continued...)

-2-

D. Kan. Rule 7.1(e);[5] and (4) follow the Court's Summary Judgment Guideline No. 6.[6]  Motion To Strike (Doc. #125) at 1-2, 9.

### A. Plaintiffs' Response To Defendant's Statement Of Uncontroverted Facts

Defendant asserts that in response to its statement of uncontroverted facts, plaintiffs fail to refer with particularity to portions of the record on which they rely.  Motion To Strike (Doc. #125) at 1, 4-6.  Specifically, defendant asserts that "several" paragraphs fail to cite specific portions of the record.  See id. at 4, ¶ 4 (citing paragraph nos. 15, 16, 17, 20, 21, 22, 23 and 24).  The Court's review of plaintiffs' responses indicates that for the most part, they do cite specific portions of the record.  For instance, paragraph no. 16 states as follows:

> 16.  Silvia Cervantes, Aunt of N.U., purchased the dress prior to the start of the school year, 2013 (August or September) from the Wal-Mart Store on Wanamaker. She initially purchased it for her daughter, but it did not fit her. Thus, she kept it aside and presented it to N.U. on her birthday, December 15, 2013. The dress at the time of sale was on a clearance rack and the dress did not include a top. (Silvia Cervantes deposition, p. 39. l.3 to p. 46, l.12) Attachment A.

Plaintiffs' Response To Statement Of Facts (Doc. #118) at 12, ¶ 12.  While plaintiffs could have more precisely supported individual sentences with pin point cites, the responses are not written in a way that makes it overly burdensome for defendant to respond.  Cf. Tolle v. Am. Drug Stores, Inc.,

---

[4](...continued)
by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

D. Kan. Rule 56.1(b)(2).

[5]     District of Kansas Rule 7.1(e) provides that absent a court order, "[t]he arguments and authorities section of briefs or memoranda must not exceed 30 pages."  D. Kan. Rule 7.1(e).

[6]     The Court provides Summary Judgment Guidelines on its website (http://www.ksd.uscourts.gov/rules-sub-page/).  Guideline No. 6 states that "[l]egal arguments should not be set forth in a party's statement of the facts."

No. 05-2191-KHV, 2006 WL 1537398, at *1 (D. Kan. June 1, 2006) (reluctantly striking plaintiffs' summary judgment response that was flagrant violation of D. Kan. Rule 56.1(b)(1) where court could not envision how defense counsel could prepare meaningful reply).  As noted below, to the extent either party asserts facts that are not supported by record cites, the Court disregards them for purposes of ruling on defendant's summary judgment motion.

Defendant complains that in opposition to several of its fact contentions, plaintiffs repeatedly cite their response to paragraph no. 11.  <u>Motion To Strike</u> (Doc. #125) at 6.  Defendant asks the Court to disregard plaintiffs' responses to paragraph nos. 11, 15, 16, 17, 20, 21, 22, 23, and 24.  <u>See</u> <u>id.</u>  As discussed below regarding the merits of defendant's summary judgment motion, the parties hotly dispute whether defendant has correctly identified the dress that N.U. wore at the time of the accident.  In paragraph no. 11, defendant asserts that N.U.'s dress was "a Faded Glory yellow 100% cotton smocked spaghetti-strapped sundress with dots."  <u>Motion For Summary Judgment</u> (Doc. #115) at 3, ¶ 11.  In support of the assertion, defendant cites unverified photographs which do not in themselves support the contention.  <u>See</u> <u>id.</u>  In response to paragraph no. 11, plaintiffs provide 15 subparagraphs (labeled "a" to "o") which they contend controvert defendant's identification of the dress.  Ideally, plaintiffs would have provided this information in their statement of additional facts and referred to the additional fact paragraphs to show that they controverted defendant's assertion in paragraph no. 11.  The format of plaintiffs' response, however, does not flagrantly disregard the rules.  More importantly, it allows for an adequate response by defendant.  <u>Cf.</u> <u>Tolle</u>, 2006 WL 1537398, at *1.  The Court overrules defendant's motion on this ground.

**B.      Plaintiffs' Statement Of Additional Uncontroverted Facts**

Defendant contends that plaintiffs' statement of additional uncontroverted facts "are posed in an intentionally vague manner, contain multiple factual allegations, and do not make specific references to the record in support of *each* factual contention." Motion To Strike (Doc. #125) at 2 (emphasis in original). Defendant asserts that the "majority" of plaintiffs' additional facts contain citations at the end of numerous sentences (or even paragraphs), making it unclear which statement of fact the reference allegedly supports. See id. In particular, defendant points to paragraph nos. 7, 8, 9, 10, 16, 23, 26, 35 and 36.[7] See id. As with the responses to defendant's statement of uncontroverted facts, plaintiffs could have more precisely cited the evidentiary support for their statement of additional facts. Nevertheless, the additional fact paragraphs are not written in a way which makes it overly burdensome for defendant to respond.[8] Cf. Tolle, 2006 WL 1537398, at *1. The Court overrules defendant's motion on this ground.

---

[7]      In response to defendant's motion for summary judgment, plaintiffs assert 36 additional fact paragraphs. See Plaintiffs' Response To Statement Of Facts (Doc. #118) at 7-20. Defendant asserts that the "majority" contain citations at the end of multiple sentences, but specifically seeks to strike only nine paragraphs, or 25 per cent of the additional paragraphs. See Motion To Strike (Doc. #125) at 2.

[8]      Moreover, many of the additional fact assertions are not material to the Court's ruling herein.

**C.     Page Limitation**

Defendant asserts that plaintiffs' response to its summary judgment motion exceeds the 30-page limit set forth in D. Kan. Rule 7.1(e).  See Motion To Strike (Doc. #125) at 8.  Under D. Kan. Rule 7.1(e), absent a court order, the arguments and authorities section of briefs or memoranda must not exceed 30 pages.  D. Kan. Rule 7.1(e).  By its terms, the rule applies only to the argument and authorities section of briefs and memoranda and therefore not to statements of fact.

In response to defendant's motion for summary judgment, plaintiffs filed two documents: (1) a 20-page response to defendant's statement of facts (Doc. #118) and (2) a 20-page memorandum in opposition (Doc. #119).  Defendant asserts that the first document, i.e. the response to defendant's statement of facts (Doc. #118), includes legal argument such that the combined filings exceed the 30-page limitation.  Defendant asks the Court to strike any argument that exceeds 30 pages.  See Motion To Strike (Doc. #125) at 8.  Defendant makes no attempt to delineate which statements of fact allegedly constitute improper legal argument.[9]  Defendant's motion is overruled on this ground.

---

[9]        In their statement of additional facts, plaintiffs assert 36 numbered paragraphs.  See Plaintiffs' Response To Statement Of Facts (Doc. #118) at 7-20.  In response to 22 of the numbered paragraphs, defendant objects that "[t]he statement violates D. Kan. Rule 7.1 in that it violates the 30 page maximum allowed," presumably because it allegedly contains legal argument.  Defendant Wal-Mart Stores, Inc.'s Reply To Plaintiffs' Response To Motion For Summary Judgment (Doc. #124) filed March 15, 2017, ¶¶ 2, 3, 4, 6, 7, 8, 9, 12, 16, 17, 19, 20, 21, 22, 23, 24, 26, 28, 29, 34, 35, 36.  The Court cannot discern any difference between paragraphs to which defendant objects on page limitation grounds and those to which it does not object.  For instance, defendant objects that paragraph no. 12 violates the page limitation.  Paragraph no. 12 states as follows:

Deposition Exhibit 31, Attachment R, reflects that the garment failed the sizing test required by Wal-Mart's testing manual. Sizing defects were problematic with this style garment from its inception as reflected in the testimony of Topeka Wal-Mart Store Manager Dale Pritchett.  (Dale Pritchett deposition, p. 17, 7 to p. 23, 17), Attachment S. Pritchett deposition Exhibit 40 confirms that the product was designed by Wal-Mart employees. Attachment T.

(continued...)

**D.    Summary Judgment Guideline No. 6**

Defendant asserts that plaintiffs have failed to comply with the Court's Motion for Summary Judgment Guideline No. 6, which provides that attorneys should not set forth legal arguments in the statement of facts. Motion To Strike (Doc. #125) at 2-3, 8. As discussed, defendant has not indicated which fact paragraph(s) allegedly contain legal argument. Moreover, defendant has not shown that if even if a fact paragraph does contain legal argument, the proper remedy is to strike it.[10] The Court overrules defendant's motion on this ground.

**II.    Motion For Summary Judgment**

**A.    Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735,

---

[9](...continued)
Plaintiffs' Response To Statement Of Facts (Doc. #118) at 12, ¶ 12.

Defendant does not object to paragraph no. 13, which states as follows:

Mr. Pritchett understands that by definition a defect in a product means that it is not 100 percent as intended for its purpose. (Pritchett deposition, p. 18, 1 - 13.) Attachment S. In supplementing Interrogatory No. 12, Wal-Mart recognizes that an error in manufacturing constitutes fault. Deposition Exhibit 35, Attachment H. Wal-Mart took no action after the sizing defect came to its attention despite the fact Wal-Mart had the ability to remove the product from its stores. (Dale Pritchett deposition, p. 38, 1 to p. 44, 19) Attachment S.

Id. at 12, ¶ 13.

[10]    The Court is confident that it can easily distinguish between facts and legal argument.

740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. See Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## B.     Facts

Unless otherwise noted, the following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiffs.[11]

On February 27, 2014, when N.U. was seven years old, she wore a dress that caught fire and caused her injury.  At the time of the accident, N.U. was standing with three siblings in front of the family fireplace.  Her father, Heriberto Unzueta, had started a fire and then went downstairs to exercise.  Unzueta instructed his children that fire is dangerous and they should not go near it.[12] Unzueta does not recall whether he closed the metal mesh protective screens on the fireplace.  He is aware that if the metal mesh protective screens were shut, they would have protected the fire and embers from coming out of the fireplace.  He also knows that if someone gets too close to a fire, his or her clothes might catch on fire.

The dress that N.U. wore was a "Faded Glory" brand that only defendant sells.  A third-party manufacturer made the dress in India for defendant to sell in the United States.  The dress was made of 100 per cent cotton.  Photographs of burned remains of the dress indicate that it was a light-colored sun dress with spaghetti straps.  See Exhibit K to Motion For Summary Judgment (Doc. #115).[13]

---

[11]     The Court includes only those facts which are material to its decision herein and disregards any facts which are not supported by record citations.

[12]     The record does not disclose when Unzueta so instructed his children.  See Deposition of Heriberto Unzueta at 18:1-11 (discussing whether he "ever" instructed his children about safety around fireplaces).

[13]     Defendant asserts that Exhibit K includes photographs that were taken at an inspection of the burned dress on December 15, 2015.  See Motion For Summary Judgment (Doc. #115) at 3, ¶ 11.  Defendant provides no support for the assertion.  See id.  Plaintiffs dispute whether defendant has correctly identified the dress but apparently do not challenge the accuracy
(continued...)

Plaintiffs did not produce any hang tags that were on the dress at the time of purchase or any receipts or other documentation to identify the style number of the dress. Ordinarily, the left inseam of the dress would have a label that contains specific product information. See Affidavit Of Angie Davis ¶ 6, Exhibit A to Defendant Wal-Mart Stores, Inc.'s Opposition To Plaintiffs' Motion To Compel Disclosure ("Wal-Mart's Opposition To Motion To Compel") (Doc. #64) filed March 18, 2016. The inseam label is not available on the burned remains of N.U.'s dress. See id. ¶¶ 6-9.

Absent specific product information, defendant cannot conclusively identify the dress that N.U. wore.[14] See, e.g., Wal-Mart's Opposition To Motion To Compel (Doc. #64) filed March 18, 2016 at 1-2 (absent specific product information such as UPC or product codes, locating and identifying product information on dress sold by defendant extremely arduous if not impossible); Affidavit Of Angie Davis ¶ 9 (any one of multiple potential buyers might have been responsible for purchasing this particular line of dresses; absent specific product information from label on left inseam of dress, impossible to know which buyer and even then no guarantee buyer would recognize dress among many different products within buyer's purview).[15]

---

[13](...continued)
of the photographs in Exhibit K. See Plaintiffs' Response To Defendant's "Statement Of Uncontroverted Facts" And Plaintiffs' "Statement Of Additional Uncontroverted Facts" ("Plaintiffs' Response To Statement Of Facts") (Doc. #118) filed March 1, 2017 at 2-5, ¶¶ 11(a)-(o).

[14]     The parties agree that defendant sold the dress which N.U. wore. The model number of the dress is relevant to determining whether its fabric complied with relevant safety standards.


Twenty manufacturers in India supply defendant Faded Glory products. Affidavit Of Angie Davis ¶ 19. In 2012, they supplied over three million Faded Glory products. Id. In 2013, they supplied over four million Faded Glory products. Id.

[15]     On February 16, 2016, plaintiffs filed a motion to compel defendant to respond to interrogatories and requests for production of documents regarding, inter alia, identification of the
(continued...)

Defendant contends that N.U. wore Style No. FG 10D100L, which it sold in the spring of

_____

[15](...continued)
dress at issue.  See Plaintiffs' Motion To Compel Disclosure (Doc. #51) ¶¶ 2, 6, 14.

In response to the motion, defendant asserted that due to the high number of Faded Glory products and lack of specific product information, it had been unable to conclusively identify the dress which N.U. wore at the time of the accident.  See Defendant Wal-Mart Stores, Inc.'s Opposition To Plaintiffs' Motion To Compel Disclosure ("Wal-Mart's Opposition To Motion To Compel") (Doc. #64) filed March 18, 2016 at 1.  Specifically, defendant stated as follows:

> [T]his particular dress is one of thousands of Faded Glory branded products, and girls dresses in particular, manufactured in India by third-party suppliers to Wal-Mart.  Locating and identifying product information on a dress sold by Wal-Mart may appear to be relatively simple theoretically; in practice, it is an extremely arduous – if not sometimes impossible – endeavor in the absence of specific product information such as UPC or product codes.  The volume of products sold by Wal-Mart requires that Wal-Mart's product records are created and managed in its databases by specific UPC or product codes, manufacturers, and other product specific criteria.  In the absence of specific product information, Wal-Mart cannot reasonably narrow its search field criteria.

Wal-Mart's Opposition To Motion To Compel (Doc. #64) at 1-2.

To support its response, defendant provided an affidavit by Angie Davis, a member of the product development team.  Affidavit Of Angie Davis ¶ 5.  Davis stated, in part, as follows:

> Wal-Mart has numerous buyers who purchase Faded Glory products manufactured in India on behalf of Wal-Mart.  Those buyers purchase thousands of products on behalf of the company.  There are multiple potential buyers who might have been the buyer responsible for the purchase of this particular line of dresses. [Absent specific product information from the label on the left inseam of the dress], it is impossible to know which buyer is the appropriate buyer, and even then there is no guarantee the buyer would recognize the dress among the many different products within that buyer's purview.

Id. ¶ 9.

Almost two months later, on May 2, 2016, defendant sought leave to file a surreply, asserting that it had now identified the dress.  See Defendant Wal-Mart Stores, Inc.'s Motion For Leave To File A Sur-Reply To Plaintiffs' Reply In Support Of Plaintiffs' Motion To Compel (Doc. #72) at 1.  Defendant did not explain who identified the dress or how it was identified.  See id.

2010.  See Defendant's Motion (Doc. #115) at 4, ¶ 13.  To support its contention, defendant provides

an affidavit by David Sillery, in-store buyer for Style No. FG 10D100L.[16]  See Affidavit Of David

Sillery, Exhibit N to Defendant's Motion (Doc. #115).  Sillery states that based on his review of

photographs of the burned dress, he can "confirm" that the remains of the burned dress match

Style No. FG 10D100L.  See id. ¶¶ 4-6.[17]

---

[16]     On May 20, 2016, defendant provided supplemental disclosures under Rule 26(a)(1)(A), Fed. R. Civ. P.  Regarding the person most knowledgeable about purchasing the dress at issue, defendant listed Lawrence Sammuli, its Senior Director.  Defendant Wal-Mart Stores, Inc.'s Supplemental Rule 26(a)(1)(A) Disclosures, ¶ A(1), Exhibit I to Plaintiffs' Statement Of Facts (Doc. #118).  Regarding the person most knowledgeable about product design, defendant listed Angie Davis, Senior Product Development Manager.  Id., ¶ A(2).

On July 29, 2016, defendant served supplemental interrogatory responses.  See Defendant Wal-Mart Stores, Inc.'s Supplemental Responses To Plaintiffs' First Interrogatories, Exhibit H to Plaintiffs' Statement Of Facts (Doc. #118).  Interrogatory No. 2 asked it to identify "each person believed or known by you to have knowledge concerning any of the issues raised by the pleadings." Id. at 1.  Defendant answered as follows: "In further answering, now that the dress has been identified, defendant has provided the identification of individuals likely to have discoverable information in its Supplemental Rule 26 Disclosures served on May 20, 2016." Id. at 1-2.

[17]     In the affidavit, Sillery states, in part, as follows:

4.      I have reviewed Consumer Testing Lab Reports marked Exhibits 65 and 66 in this case, and can confirm that the dresses identified therein include a 2-piece set of 100% cotton yellow smocked spaghetti-strapped sundress with dots and matching t-shirt, which was FG Style No. 10D100L, of which I was the in-store buyer, as identified on those exhibits.

5.      I have reviewed a set of photographs of the remains of the dress worn by N.U. on February 27, 2014, which are identified as being taken at an inspection on December 15, 2015.

6.      From my personal review and knowledge, I can confirm that the remains of the dress worn by N.U. on February 27, 2014 match the Faded Glory Style No. 10D100L identified in Exhibits 65 and 66.

Affidavit Of David Sillery ¶¶ 4-6, Exhibit N to Defendant's Motion (Doc. #115).

-12-

Sylvia Cervantes – the person who purchased the dress that N.U. wore – examined the same photographs as Sillery and testified that Style No. FG 10D100L is not the same dress that she purchased. Cervantes Deposition at 65:8-23, Exhibit A to <u>Plaintiffs' Response To Statement Of Facts</u> (Doc. #118).

Plaintiff's expert, Steven M. Spivak, reviewed evidence in the case and opined as follows: The shell and lining fabric of N.U.'s dress was made of a very light-weight construction. Spivak Expert Report ¶ 11, Exhibit L to <u>Plaintiffs' Response To Statement Of Facts</u> (Doc. #118).[18] Such fabric "can ignite in as little as one or two seconds from a tiny, pinpoint needle flame." <u>Id.</u> ¶ 12. The raised fiber surface spots on the dress made it especially prone to immediate ignition from a burning ember or spark emitted by a fireplace. <u>Id.</u> The public does not know or appreciate the easy ignition, rapid flame spread and engulfing fire that can result with momentary ignition of such lightweight cotton fabric and a loose, flowing skirt. <u>Id.</u> ¶ 17.

---

[18] Spivak is Professor Emeritus and served as Chair of Fire Protection Engineering at the University of Maryland. <u>See</u> Curriculum Vitae attached to Spivak Expert Report.

**C.     Analysis**

Plaintiffs assert product liability claims based on defective design and failure to warn.[19]  See Plaintiffs' Memorandum In Opposition To Defendant's Summary Judgment Motion ("Plaintiffs' Opposition") (Doc. #119) filed March 1, 2017 at 7.  Defendant seeks summary judgment on all claims.  Defendant asserts that plaintiffs cannot establish that it (1) defectively designed the dress or (2) had a duty to warn of an obvious risk.  Defendant's Motion (Doc. #115) at 8-13.

**1.     Defective Design**

Plaintiffs assert that because the dress was made of extremely flammable fabric that posed an unreasonably dangerous risk of catching fire and causing or allowing burns to young girls, it was defectively designed.  See Pretrial Conference Order (Doc. #112) at 10-13.  Defendant asserts that because the dress complied with all applicable legislative or regulatory standards regarding fabric flammability of children's apparel, plaintiffs cannot prevail on the claim.  See Defendant's Motion (Doc. #115) at 8-12.  If a product complies with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, Kansas law presumes

---

[19]        In the pretrial order, plaintiffs assert claims for negligence, failure to warn and strict liability.  See Pretrial Conference Order (Doc. #112) filed January 25, 2017 at 10-16.  Pursuant to K.S.A. § 60-3302(c), all legal theories of recovery, e.g. negligence, strict liability and failure to warn, merge into one legal theory called a "product liability claim."  Miller v. Lee Apparel Co., 19 Kan. App.2d 1015, 1023, 881 P.2d 576, 583 (1994) (quoting Patton v. Hutchinson Wil-Rich Mfg. Co., 253 Kan. 741, 756, 861 P.2d 1299, 1311 (1993)).  Under Kansas law, a product can be defective if (1) a flaw is present in the product at the time of sale, i.e. a manufacturing defect; (2) the product, although perfectly manufactured, contains a defect that makes it unsafe, i.e. a design defect; or (3) the producer or assembler of the product fails to adequately warn of a risk or hazard related to the way the product was designed, i.e. a warning defect.  See Delaney v. Deere & Co., 268 Kan. 769, 772, 999 P.2d 930, 934 (2000).

that it is not defective with respect to design or performance.  See K.S.A. § 60-3304(a);[20] Miller v.

Lee Apparel Co., 19 Kan. App.2d 1015, 1025-26, 881 P.2d 576, 585 (1994).

Defendant asserts that the presumption of non-defectiveness applies here because the dress

that it has identified – Style No. FG 10D100L – complied with all relevant safety standards.  See

Defendant's Motion (Doc. #115) at 4-5, 9-10.[21]  Defendant's argument fails at the outset, because

the record presents a genuine issue of material fact whether N.U. wore Style No. FG 10D100L at

the time of the accident.

Based on the affidavit of David Sillery, defendant contends that it is "uncontroverted" that

N.U. wore Style No. FG 10D100L.    Id.    As noted, Sillery was the in-store buyer for

Style No. FG 10D100L.  See Defendant's Motion (Doc. #115) at 4, ¶ 13.  Sillery states that after

---

[20]        Section 60-3304(a) states as follows:

> When the injury-causing aspect of the product was, at the time of manufacture, in
> compliance with legislative regulatory standards or administrative regulatory safety
> standards relating to design or performance, the product shall be deemed not
> defective by reason of design or performance, or, if the standard addressed warnings
> or instructions, the product shall be deemed not defective by reason of warnings or
> instructions, unless the claimant proves by a preponderance of the evidence that a
> reasonably prudent product seller could and would have taken additional precautions.

K.S.A. § 60-3304.  Courts have found that the last clause of the statute, i.e. the rebuttable
presumption clause, applies to claims regarding both performance/design defects and
warning/instruction defects.  See Miller, 19 Kan. App.2d at 1025-26, 881 P.2d at 585; Alvarodo v.
J.C. Penney Co., 735 F. Supp. 371, 374 (1990).   Plaintiffs may rebut the presumption by
demonstrating by a preponderance of the evidence that a reasonable manufacturer would have done
more.  See Miller, 19 Kan. App.2d at 1025-26, 881 P.2d at 585.

[21]        Defendant contends that 16 C.F.R. Part 1610 provides the only government-required
test for the fabric used in Style No. FG 10D100L.  See Defendant's Motion (Doc. #115) at 5, ¶ 20.
Defendant asserts that it engaged Consumer Testing Labs to perform the required pre-production
and production testing and that the fabric passed all required flammability testing.  See id. ¶¶ 22-24.

reviewing photographs of N.U.'s burned dress remains (Defendant's Exhibit K) and Style No. FG 10D100L (Defendant's Exhibit M), he can "confirm" that the burned remains of N.U.'s dress match Style No. FG 10D100L. <u>Affidavit Of David Sillery</u> ¶¶ 4-6, Exhibit N to <u>Defendant's Motion</u> (Doc. #115).

Defendant ignores the testimony of Sylvia Cervantes, who purchased the dress that N.U. wore. Cervantes examined the same photographs as Sillery and testified unequivocally that Style No. FG 10D100L is not the same dress that she purchased.[22] Cervantes Deposition at 65:8-23, Exhibit A to <u>Plaintiffs' Statement Of Facts</u> (Doc. #118). Moreover, defendant's own statements in discovery and to the Court suggest that without specific product information, it cannot conclusively identify the dress that N.U. wore. <u>See, e.g.</u>, <u>Opposition To Motion To Compel</u> (Doc. #64) at 1-1 (absent specific product information such as UPC or product codes, locating and identifying product information on dress sold by defendant extremely arduous if not sometimes impossible); <u>Affidavit Of Angie Davis</u> ¶ 9 (any one of multiple potential buyers might have been responsible for purchasing this particular line of dresses; absent specific product information, impossible to know which buyer and even then no guarantee buyer would recognize dress among many different products within buyer's purview).

---

[22] The Court's review of summary judgment exhibits indicates that Style No. FG 10D100L appears to have a tiered skirt that expands into an "A" shape, while N.U.'s burned dress appears to have a straight skirt with no tiers. <u>Compare</u> Defendant's Exhibit K (burned dress remains) <u>with</u> Defendant's Exhibit M (Style No. FG 10D100L). Admittedly, the contours of the burned dress are difficult to discern, which also casts doubt on whether Sillery has been able to identify the correct dress. The Court notes that original photographs may reveal clearer details than photocopies contained in the exhibits.

Construing the evidence in the light most favorable to plaintiffs, a jury could reasonably find that N.U. wore a dress different than Style No. FG 10D100L. On this record, defendant is not entitled to summary judgment on the defective design claims.

### 2. Duty To Warn

Plaintiffs assert that defendant should have warned of foreseeable dangers associated with young girls wearing the dress in the vicinity of an open flame or fire and that the dress (1) had highly flammable characteristics; (2) did not incorporate flame retardant safeguards; (3) failed in store testing; and (4) was designed to be sold as a two-piece ensemble with a protective heavy cotton top. See Pretrial Conference Order (Doc. #112) at 13-14. Defendant asserts that because it is obvious that cotton clothing will burn when exposed to an open flame, it had no duty to warn and therefore plaintiffs cannot prevail on the failure to warn claims. See Defendant's Motion (Doc. #115) at 12-13.

Kansas law measures a manufacturer or seller's duty to warn based on what is reasonable under the circumstances. See Miller v. Lee Apparel Co., 19 Kan. App.2d 1015, 1029-30, 881 P.2d 576, 587 (1994). Under K.S.A. § 60-3305(c), the duty to warn does not extend to obvious hazards which a reasonable user or consumer would have known. K.S.A. § 60-3305(c);[23] see also Miller,

---

[23]    Section 60-3305 states as follows:

In any product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend:

(a) [t]o warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and

(continued...)

19 Kan. App.2d at 1030, 881 P.2d at 587.  Also, a manufacturer or seller need not warn about

dangers that are actually known to the user.  <u>Miller</u>, 19 Kan. App.2d at 1030, 881 P.2d at 587.

Defendant asserts that it had no duty to warn because the dangers of fire are open and

obvious.  Defendant asserts that N.U.'s father, Heriberto Unzueta, knew the hazards and dangers of

lighting a fire in the fireplace and that clothing can catch on fire.  <u>See</u> Defendant's Motion

(Doc. #115) at 13.  Defendant provides no legal analysis or authority to support that the knowledge

of N.U.'s father can or should be imputed to her.  <u>See</u> <u>id.</u>  Moreover, defendant cites no authority

that as a matter of law, it had no duty to warn on the facts of this case.[24]

---

[23](...continued)

> any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

> (b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

> (c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.

K.S.A.§ 60-3305.

[24]    Defendant's memorandum in support of summary judgment devotes less than two pages to its argument that it had no duty to warn.  <u>See</u> <u>Motion For Summary Judgment</u> (Doc. #115) at 12-13.  Defendant's reply does not mention the issue.  <u>See</u> <u>Defendant Wal-Mart Stores, Inc.'s Reply To Plaintiffs' Response To Motion For Summary Judgment</u> (Doc. #124) filed March 15, 2017 at 1-21.

In support of its argument, defendant cites <u>Miller v. Lee Apparel Co.</u>, 19 Kan. App.2d 1015, 881 P.2d 576 (1994).[25]  Plaintiff in <u>Miller</u>, an adult male, asserted product liability claims against the manufacturer of coveralls that caught fire and burned him.  The  fabric of the coveralls had passed all federal flammability standards.  <u>See</u> <u>Miller</u>, 19 Kan. App.2d at 1018-19, 881 P.2d at 580-81.  The fire occurred when plaintiff was under the hood of a pickup, pouring gasoline from a small plastic cup into an uncovered carburetor, while his wife pumped the throttle and attempted to start the engine.  <u>See</u> <u>id.</u>, 19 Kan. App.2d at 1017, 881 P.2d at 580.  On the facts of that case, the trial court granted summary judgment in favor of defendant.  The trial court found, <u>inter alia</u>, that defendant had no duty to warn of that which is obvious, <u>i.e.</u> "that clothes might be ignited if exposed to the intense heat and fire of a gasoline-induced carburetor backfire."  <u>Id.</u>, 19 Kan. App.2d at 1020, 881 P.2d  at 582.  The Kansas Court of Appeals affirmed.  The Kansas Court of Appeals found that it was "obvious that when clothes are exposed to a flame, particularly the intense flame of a carburetor backfire, the garment may catch on fire."  <u>Id.</u>, 19 Kan. App.2d at 1031, 881 P.2d  at 588.  The Kansas Court of Appeals concluded that under the circumstances, defendant had no duty to warn that when exposed to an intense flame, the lining of the coveralls could ignite and be difficult to extinguish once ignited.  <u>See</u> <u>id.</u>, 19 Kan. App.2d at 1031, 881 P.2d  at 588.

---

[25]     The other cases which defendant cites are not on point and/or not persuasive.  <u>See</u> <u>Wilson v. Bradlees of New England</u>, 250 F.3d 10, 14-15 (1st Cir. 2001) (affirming judgment as matter of law at close of evidence at trial on failure to warn claim, noting that district court had reserved for trial whether defendant had duty to warn of particular flammability characteristics of sweatshirt that were not obvious); <u>Austin v. Clark Equip. Co.</u>, 48 F.3d 833, 836-37 (4th Cir. 1995) (failure to warn case involving forklift collision); <u>Sampson v. Zimmerman</u>, 502 N.E.2d 846, 848-49 (Ill. App. 1986) (premises liability case involving lighted candle that caused child's clothes to catch fire); <u>Brech v. J.C. Penney, Inc.</u>, 698 F.2d 332, 334-35 (8th Cir. 1983) (affirming bench trial findings in products liability case involving nightgown that caught fire); <u>Hancock v. Aiken Mills, Inc.</u>, 185 S.E. 188, 189-90 (S.C. 1936) (negligence claims against persons responsible for building fire that caught child's clothes on fire).

-19-

The facts in Miller are distinguishable.  In Miller, the fabric of plaintiff's coveralls had passed applicable federal flammability standards, which created a presumption that the product was not defective.  See Miller, 19 Kan. App.2d at 1025-26, 881 P.2d at 585.  As discussed, that fact is not established here.[26]  Moreover, Miller involved the intense flame of a gasoline-induced carburetor backfire, while this case involves an alleged stray spark or ember from a fireplace.  Here, plaintiffs assert that defendant manufactured the dress with light-weight fabric which can quickly ignite from "a tiny, pinpoint needle flame" and that the raised fiber surface spots on the dress made it especially prone to immediate ignition from a burning ember or spark emitted by a fireplace.  Spivak Expert Report ¶¶ 11-12, Exhibit L to Plaintiffs' Response To Statement Of Facts (Doc. #118).  Construed in the light most favorable to plaintiffs, the record presents a genuine issue of material fact whether a reasonable user or consumer obviously would have known that N.U.'s dress would catch fire under the circumstances.  See, e.g., Wilson v. Bradlees of New England, 250 F.3d 10, 14 (1st Cir. 2001) (trial court reserved for trial whether defendant had duty to warn of "particular" flammability characteristics of sweatshirt that were not obvious).  Defendant is not entitled to summary judgment on this claim.

IT IS THEREFORE ORDERED that Defendant Wal-Mart Stores, Inc.'s Motion For Summary Judgment And Memorandum In Support (Doc. #115) filed February 8, 2017 is OVERRULED.

---

[26]     Also, unlike Miller, this case involves children's clothing which may be subject to more stringent flammability standards.

**IT IS FURTHER ORDERED** that Defendant Wal-Mart Stores, Inc.'s Motion To Strike Plaintiffs' Response To Defendant's Statement Of Uncontroverted Facts And Plaintiffs' Statement Of Additional Uncontroverted Facts (Doc. #125) filed March 15, 2017 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Wal-Mart Stores, Inc.'s Motion For Oral Argument On Wal-Mart Stores, Inc.'s Motion For Summary Judgment And Suggestions In Support Thereof (Doc. #139) filed April 18, 2017 is **OVERRULED as moot**.

Dated this 27th day of June, 2017 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge